# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**ANDREW SCOTT KORA**                                    **CIVIL ACTION**

**VERSUS**

                                                                      **NO. 20-327-JWD-RLB**

**ANDREW M. SAUL**
**COMMISSIONER OF SOCIAL SECURITY**

## <u>NOTICE</u>

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on August 11, 2021.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ANDREW SCOTT KORA**                                              **CIVIL ACTION**

**VERSUS**
                                                                           **NO. 20-327-JWD-RLB**
**ANDREW M. SAUL**
**COMMISSIONER OF SOCIAL SECURITY**

---

## REPORT AND RECOMMENDATION

---

Andrew Scott Kora (Plaintiff) seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security Act. (R. Doc. 1). Having found all the procedural prerequisites met (Tr. 1-5), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you… file an action in Federal district court…"). For the reasons given below, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

## I.     PROCEDURAL HISTORY

Plaintiff filed his application for disability insurance benefits on October 3, 2017, (Tr. 225-226), alleging that he became disabled on October 17, 2016 because of a back injury, social anxiety, depression, bi-polar, and sleep disorder. (Tr. 225). Plaintiff's application for benefits was initially denied by the Social Security Administrative on December 20, 2017. (Tr. 180-83). Thereafter, on January 29, 2018, Plaintiff filed a written request for a hearing before an

Administrative Law Judge ("ALJ"). (Tr. 184-86). The ALJ held a video hearing on January 29, 2019, after which he issued an unfavorable decision on May 15, 2019. (Tr. 128-44).

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability benefits. The medical evidence established that Plaintiff suffers from major depressive disorder, anxiety, and Attention Deficit Hyperactive Disorder ("ADHD"), severe degenerative disc disease of the spine, and severe degenerative joint disease versus traumatic joint disease. (Tr. 133-34). The ALJ, however, concluded (1) that the limitations caused by Plaintiff's depression, anxiety, and ADHD were mild and non-severe and (2) the severity of Plaintiff's physical impairments do not meet or medically equal the criteria of any impairment listed in the social security regulations. (Tr. 134-37). The ALJ also found that, despite Plaintiff's inability to perform past relevant work, Plaintiff has the residual functional capacity ("RFC") to perform the full range of sedentary work. (Tr. 138). Moreover, considering Plaintiff's RFC, age, education, and work experience, the Medical-Vocational Guidelines indicate that Plaintiff is not disabled. (Tr. 143-44).

Plaintiff's request for review of the ALJ's decision, (Tr. 222), was denied by the Appeals Council on April 7, 2020. (Tr. 1). The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II.    STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether there is substantial evidence to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as less than a preponderance but "more than a mere scintilla."

*Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir. 1994). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan,* 895 F.2d at 1022. The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (internal quotations omitted). The Court may not reweigh the evidence or try the issues *de novo,* nor may it substitute its judgment for that of the Commissioner. *Cook v. Heckler,* 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000) (quoting 42 U.S.C. § 405 (g)). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *See Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.    ALJ'S DETERMINATION

To qualify for benefits, the claimant must establish that he is disabled within the meaning of the Social Security Act ("SSA"). *Herron v. Bowen,* 788 F.2d 1127, 1131 (5th Cir.1986) (internal citations omitted). The SSA defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan,* 914 F.2d at 618.

The Commissioner (through an ALJ) applies a five-step sequential analysis to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4). First, the claimant must prove he or she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he or she proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he or she is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education, and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1.     Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2021.

2.     Plaintiff has not engaged in substantial gainful activity since October 17, 2016, the alleged onset date. 20 C.F.R. § 404.1571 *et seq.*

3.     Plaintiff has the following severe impairments: degenerative disc disease of the spine and degenerative joint disease versus traumatic joint disease. 20 C.F.R. § 404.1520(c).

4.     Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1; 20 C.F.R. §§ 404.1520(d), 404.1525 and 4041526.

5.    Plaintiff has the RFC to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) meaning the claimant can lift and/or carry up to 10 pounds occasionally and less than 10 pounds frequently; he can sit for six hours in an eight-hour day; and he can stand and/or work for two hours in an eight-hour day.

6.    Plaintiff is unable to perform any past relevant work. 20 C.F.R. § 404.1565.

7.    Plaintiff was born on April 17, 1975 and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. 20 C.F.R. § 404.1563.

8.    Plaintiff has a high school education and is able to communicate in English.  20 C.F.R. § 404.1564.

9.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled. 20 C.F.R. § 404.1568.

10.    Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1569 and 404.1569a.

11.    Plaintiff has not been under a disability, as defined in the Social Security Act from October 17, 2016, through the date of this decision. 20 C.F.R. § 404.1520(g).

## IV.    DISCUSSION

Plaintiff advances four arguments in support of his request to reverse the ALJ's decision, which will be addressed within the framework of the five-step analysis. Specifically, Plaintiff avers that remand is required because: (1) the ALJ failed to assist Plaintiff, an unrepresented and mentally ill claimant, in developing the medical evidence of record; (2) the ALJ violated *de minimis* standard in finding that Plaintiff's mental impairments were not severe; (3) the Appeals Council erred in finding that evidence submitted to it presents no reasonable probability that it would change the outcome of the ALJ's decision; and (4) the ALJ failed to include mental limitations he found credible in his RFC assessment. (R. Doc. 10 at 1-2).

A.    **The ALJ did not fail to assist Plaintiff in developing the administrative record sufficiently**

In his first challenge to the Commissioner's decision, Plaintiff argues the ALJ failed to adhere to its duty to ensure than an adequate record is developed by failing to assist Plaintiff, a mentally ill and unrepresented claimant, obtain (1) updated records about Plaintiff's mental impairment and (2) missing records about Plaintiff's leg injury after the administrative hearing. (R. Doc. 10 at 7-10). Plaintiff further states that considering the absence of such medical records, the ALJ should have sought medical expert testimony or ordered physical or mental consultative examinations. (R. Doc. 10 at 9-10).

In response, Defendant asserts that the ALJ satisfied its duty by "extensive[ly] questioning" Plaintiff "regarding which conditions" he considered disabling, as well as acquiring and reviewing 265 pages of additional evidence. (R. Doc. 14 at 5). Defendant also argues that the ALJ does not have an affirmative duty to recontact any source, seek medical expert testimony, or order a consultative exam. (R. Doc. 14 at 13 at 6-7). Rather, these actions are within the sound discretion of the ALJ. (R. Doc. 14 at 7).

The SSA imposes a duty on the ALJ to develop the record before determining the claimant is not disabled. *Newton v. Apfel,* 209 F.3d 448, 458 (5th Cir. 2000)*;* 20 C.F.R. § 404.1545(a)(3). "The ALJ'S basic obligation to develop a full and fair record rises to a special duty when, as here, an unrepresented claimant unfamiliar with the hearing procedures appears before him." *Kane v. Heckler,* 731 F.2d 1216, 1219 (5th Cir. 1984) (internal quotation marks and citations omitted). This duty requires the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. *Brock v. Chater,* 84 F.3d 726, 728 (5th Cir. 1996). The failure of the ALJ to develop an adequate record is not, however, ground for reversal per se. The claimant must also show that he was prejudiced as a result of any deficient hearing.

*See Brock,* 84 F.3d at 728; *see also James v. Bowen,* 793 F.2d 702 (5th Cir. 1986) ("[A]ny deficiency in respect" to the ALJ's failure to develop the record in light of the plaintiff's *pro se* status "was not egregious and since the record appears to be developed with at least minimal adequacy and contains substantial evidence to support the administrative law judge's determination that" Plaintiff "is not disabled within the meaning of the statutes."). In other words, the claimant must show that, had the ALJ done his duty, he could and would have adduced evidence that might have altered the result. *See Brock,* 84 F.3d at 728 (citing *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)). Moreover, the ALJ's duty must be balanced against the fact that claimants' bear the burden of proof up through step four of the evaluation process. *Audler v. Astrue,* 501 F.3d 446, 448 (5th Cir. 2007).

Here, during the hearing, Plaintiff initiated the conversation regarding mental impairment by explaining that he has a fear of people and has been taking Prozac. (Tr.161). The ALJ then asked if Plaintiff had been receiving some mental health treatment and inquired into the progress of same. (Tr. 161). Plaintiff answered in the affirmative and explained that he was initially prescribed Prozac and Wellbuttrin, which takes four to six weeks to become effective. (Tr. 162). However, due to his fear of addiction, he stopped taking the medications but later requested another prescription. (Tr. 162). The ALJ asked if the pills were helping, and Plaintiff responded by stating that the pills helped his depression, but not his anxiety. (Tr. 162). The ALJ then concluded questioning and asked if there was anything else that Plaintiff would like to tell him. (Tr. 162).

Following the hearing, the ALJ's subsequently obtained 265 pages of additional evidence—which it reviewed, considered, and included in the administrative record as Exhibits 7F through 9F and 11F through 16F. These include records from the Baton Rouge General Medical Center, excerpts from a civil deposition of the claimant, various neurological records,

treatment records from the Neuromedical Center Clinic, radiological imaging reports, Apollo Behavior Health Records, and a Test Interpretive Report from Gislair and Associates regarding the administration of five vocational tests.[1]

Those additional records included, among other things, claimant's history of problems with treatment for various addictions and abuses, as well as the likelihood that claimant has exaggerated his pain and mental limitations. The records demonstrate a referral for pain medication addiction and abuse of psychiatric medication. His deposition transcript reflects an ability to remember and state dates, names and events. Other records describe plaintiff's mood as "euthymic" (normal or stable), his affect as "appropriate" and that he is doing much better after treatment. (Tr. 1014). Plaintiff's orientation and insight were improved.

The Court finds that the ALJ's exchange with the Plaintiff regarding his impairments as well as the ALJ's review of the entire record, including those records obtained following the hearing, satisfies the duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.

Despite obtaining and reviewing the additional evidence, Plaintiff contends that the ALJ's efforts are insufficient because the ALJ failed to obtain "updated records" including (1) records of Plaintiff's hospitalization as a result of suicidal ideation, (2) an RFC assessment performed by Dr. Darla Rutherford Burnett., Ph.D., on June 24, 2019, and (3) Dr. Burnett's treatment notes from February 2019 to June 2019. (R. Doc. 10 at 9). Moreover, Plaintiff posits

---

[1] The end of the report pertaining to "Strong Interest Inventory" is not included. Plaintiff suggests it was error for the ALJ not to obtain the remainder of this report. The introduction to this fifth section explains that it is intended to identify Mr. Kora's "general and vocational occupation interests." (Tr. 1039). While that may be beneficial for vocational placement, plaintiff provides no compelling explanation as to why that analysis would be relevant or material to the ALJ's determination as to whether the plaintiff is disabled. Likewise, the ALJ is under no duty to obtain irrelevant or immaterial evidence.

that the ALJ should have sought medical expert testimony or ordered a mental consultative examination. (R. Doc. 10 at 10).

Courts have "squarely rejected the contention that SSA regulations require to the ALJ 'to update objective medical evidence'" or recontact a medical source. *See Scott v. Callahan,* 977 F. Supp. 856, 867 (N.D. Ill. 1997) (quoting *Luna v. Shalala,* 22 F.3d 687, 693 (7th Cir. 1994)). The ALJ is only obligated to recontact a medical source when the current evidence is inadequate for the Commissioner to determine if the claimant is disabled. *Odebert v. Barnhart,* 412 F.Supp. 2d 800, 805 (E.D. Tex. 2006) ("[T]he duty to re-contact [physicians] is triggered when the [current] evidence is insufficient to make an *informed* determination. No regulation, ruling, or court holding imposes a duty to re-contact a treating or other medical source simply because existence evidence is inadequate for a *favorable* determination."). As set forth above, the Court finds that the evidence contained in the administrative record, including the 265 pages of additional evidence, was sufficient for the ALJ to make an informed decision.[2]

Finally, the Court agrees with Defendant in that the ALJ has no affirmative duty to seek medical expert testimony or order a consultative exam or recontact any particular medical source. These actions are within the sound discretion of the ALJ and are only necessary if the ALJ cannot reach a conclusion about whether the claimant is disabled without such additional evidence. 20 C.F.R. §§ 404.1517 and 404.1520b(b)(2). Again, the Court finds that the ALJ had sufficient evidence to reach a conclusion about Plaintiff's disability.

Next, Plaintiff asserts that the following medical records concerning his leg injury are absent from the administrative record: (1) records related to Plaintiff's "initial injury" in

---

[2] As Defendant notes, it was impossible for the ALJ to include the June 24, 2019 RFC assessment and June 21, 2019 treatment notes from Dr. Burnett because they were not yet in existence at the time the May 15, 2019 decision was rendered. (R. Doc. 14 at 5).

November 2015, (2) records of physical therapy treatment in November and December 2015, (3) the full report from Gisclair and Associates, Vocational Rehabilitation ("Gisclair and Associates"), and (4) records showing that Plaintiff continued to experience significant leg pain despite his spinal stimulator. (R. Doc. 10 at 9). The Fifth Circuit has explained the ALJ's duty to fully and fairly develop the record "as one of developing all relevant facts, not collecting all existing records." *Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015) (internal quotation marks and citations omitted). The Court concludes that the ALJ had sufficient relevant evidence to make an informed decision, and the mere fact that the ALJ did not have the "full report" from Gisclair and Associates or the records concerning Plaintiff's continued leg pain does not require remand.

Furthermore, the "ALJ discharges his duty to develop a complete medical history if he obtains records from the claimant's medical sources for at least twelve months preceding the date that the claimant files for benefits." *Scott,* 977 F. Supp. at 867*;* 20 C.F.R. § 404.1512(b)(1). The records submitted concerning Plaintiff's "initial injury" and the records regarding his physical therapy are outside of that range. Plaintiff filed his application for disability insurance benefits on October 3, 2017. (Tr. 225-26). Therefore, the ALJ satisfied his duty by obtaining evidence dating back to October 2016. The records Plaintiff asserts are "missing" concerns medical treatment that occurred in 2015. Accordingly, the Court finds that the ALJ fully and fairly developed the record.

**B.    The ALJ applied the correct standard in finding that Plaintiff's mental impairments were not severe, and there is substantial evidence to support same**

Plaintiff contends that the ALJ failed to apply the appropriate standard adopted by the Fifth Circuit in *Stone v. Heckler,* 752 F.2d 1099 (5th Cir. 1985) to determine the severity of Plaintiff's mental impairment. In *Stone,* the Fifth Circuit explained that an "impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the

individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d at 1101. Accordingly, to establish a severe impairment, Plaintiff need only make a "*de minimis*" showing that his impairment is severe enough to interfere with his ability to do work. *Anthony v. Sullivan,* 954 F.2d 289, 294 n.5 (5th Cir. 1992). The Fifth Circuit further explained that it would "assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to [the *Stone* opinion] or another of the same effect, or by an express statement that the construction" given "to 20 C.F.R. § 404.1520(c) (1984) is used." *Stone v. Heckler,* 752 F.2d at 1106.

    In the instant matter, the ALJ cited Social Security Ruling ("SSR") 85-28 and stated that "[a]n impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." (Tr. 132). The ALJ likewise applied SSR 85-28 directly in determining those impairments that were found to be severe. (Tr. 133). The Fifth Circuit has held that SSR 85-28 comports with *Stone* and is an acceptable reference for the proper standard for step two. *Keel v. Saul,* 986 F.3d 551, 556 (5th Cir. 2021). Accordingly, the ALJ is not assumed to have applied an incorrect standard when he cites SSR 85-28.

    Plaintiff further argues that the ALJ violated the *de minimis* standard by finding Plaintiff's impairments are not severe. The Court disagrees and concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's mental impairments are not severe. In determining the severity of Plaintiff's medically determinable mental impairments of depression, anxiety, and attention deficit hyperactive disorder, the ALJ considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders under the

Listing of Impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 134). The four areas are

known as the "paragraph B" criteria and include: (1) understanding, remembering, or applying

information; (2) interaction with others; (3) concentrating, persisting, or maintain pace; and (4)

adapting or managing oneself. After evaluating these categories, the ALJ concluded that—based

on the evaluations of physicians and Plaintiff's testimony—Plaintiff's medically determinable

mental impairments were not severe. (Tr. 134).

With respect to the first functional area of understanding, remembering, or applying

information, Dr. Burnett noted that Plaintiff did not have a serious cognitive defect after

performing a Montreal Cognitive Assessment on June 29, 2017. (Tr. 364). On March 14, 2018,

Dr. Burnett noted: (1) Plaintiff was oriented to date; (2) his memory was intact for recent and

remote events; (3) he showed no aphasia; (4) his attention and concentration was adequate in the

session; (5) his fund of knowledge was adequate for conversation; and (6) his mood was reported

to be great. (Tr. 847). On January 21, 2019, Dr. Burnett noted that although Plaintiff's memory

was sketchy, she observed improvement since his last visit. (Tr. 890). Moreover, Plaintiff

participated in a deposition on March 21, 2018 (Tr. 556). During this deposition, Plaintiff

illustrated that his memory was sufficient to recall events that occurred several years prior, in

addition to other details such as people's names and remote dates. (Tr. 561-71; 894-933).

Plaintiff also admitted that taking Adderall helps him to remain focused. (Tr. 931).

Further, the medical evidence contradicts Plaintiff's contentions that he is afraid of

people, does not leave house without medicine, and will sometimes stay in his bed for two weeks

at a time. (Tr. 161-63). On June 29, 2017, Plaintiff explained "that he enjoys going to the bar and

meeting his friends because it gets him out of his house and it is a way for him to socialize and

be around people." (Tr. 363). During Plaintiff's November 27, 2017 visit with Dr. Burnett, he

stated that although he did not like to be around people, the Klonopin that he was taking helped with his anxiety. (Tr. 322).

With respect to Plaintiff's concentration, Dr. Burnet noted on several occasions that Plaintiff's concentration and attention was normal. (Tr. 859 and 864). On other occasions, Dr. Burnett noted that Plaintiff was a little distracted, however, on October 5, 2018 and January 21, 2019, Dr. Burnett observed that Plaintiff's attention and concentration had improved with treatment. (Tr. 853, 879, and 890).

Importantly, Dr. Ryan Jones, Ph.D. also noted that Plaintiff has mild limitations in each of the four functional areas. (Tr.170). Accordingly, there is substantial evidence to support the ALJ's determination that Plaintiff's mental impairments cause only mild limitations, and therefore, remand is not required as those limitations are not severe.

### C.    The evidence submitted to the Appeals Council did not include evidence that warrants remand

Plaintiff posits that the Appeals Council erred in finding that there was no reasonable probability that the evidence Plaintiff submitted after the ALJ's decision would have changed that decision. (R. Doc. 10 at 10). The evidence submitted to the Appeals Council included treatment records from: (1) An Affective, Anxiety, Trauma and Stress-Related Disorders MMS completed by Dr. Darla Burnett, Ph.D. dated June 24, 2019; (2) Spring Valley Hospital Medical Center ("Spring Valley") dated April 7, 2019 to April 9, 2019; (3) NeuroMedical Center Clinic ("NeuroMedical") dated February 20, 2019 to June 21, 2019; and (4) Desert Parkway Behavioral Healthcare Hospital ("Desert Parkway") dated March 25, 2019 to March 29, 2019. (Tr. 2).

To justify remand, Plaintiff must show that: (1) the evidence is new; (2) the evidence is material; and (3) there is good cause for the failure to submit the evidence at the administrative level. *Bradley v. Bowen*, 809 F.2d at 1058; 42 U.S.C. § 405(g). Moreover, the evidence may not be cumulative of what is already in the record. *Pierre v. Sullivan,* 884 F.2d 803 (5th Cir. 1989).

The Court finds that the evidence submitted to the Appeals Council does not satisfy the foregoing criteria—particularly, the materiality requirement. Material evidence is defined as evidence that relates to the time-period for which benefits were denied. That is, it (1) concerns medical visits that occurred on or before the date of the ALJ's decision and (2) does not concern a subsequent disability or the deterioration of a previously non-disabling condition. *Wheat v. Barnhart,* 318 F. Supp. 2d 358, 365 (M.D. La. 2004)*; Johnson v. Heckler,* 767 F.2d 180, 183 (5th Cir. 1985); *see also Haywood v. Sullivan,* 888 F.2d 1463, 1472 (5th Cir. 1989). Evidence is also material if it presents a reasonable probability that it would change the outcome of the decision had it been before the ALJ. *Johnson v. Heckler,* 767 F.2d at 183.

First, the treatment notes from Plaintiff's visits with Dr. Burnett at NeuroMedical dated February 20, 2019 to June 21, 2019 are cumulative and they do not present a reasonable probability of changing the outcome of the ALJ's decision. The submitted records contain notes of three visits on February 20, 2019, May 9, 2019, and June 21, 2019. (Tr. 63-72).

The notes from February and May 2019 (Tr. 887-93) reflects findings that are similar to those that were obtained and considered by the ALJ. For example, during the January 21, 2019 visit, Plaintiff expressed that he was experiencing symptoms of depression and having difficulty with social situations because of his anxiety. (Tr. 887). Dr. Burnett observed that Plaintiff was oriented to date, had improved memory, had improved concentration with treatment, exhibited no aphasia, and had a euthymic mood. (Tr. 890). The newly submitted evidence contains similar notes. Dr. Burnett notes for the February and May 2019 visits are the same as the January 2019 visit, with the exception of Plaintiff losing his train of thought during their session. (Tr. 71). However, during each of these visits Plaintiff noted that he had stopped taking Adderall. (Tr. 66). The Court concludes that this minor difference would not change the outcome of the ALJ's decision. This is chiefly because the main cause of Plaintiff's loss of train of thought is his

15

failure to take his prescribed medicine, and therefore, any limitation caused by his loss of train of thought can be improved with medication. Accordingly, these records are not material and do not justify remand.

The Court reaches the same conclusion with respect to the records from Desert Parkway dated March 25, 2019 to March 29, 2019, and Spring Valley dated April 7, 2019 to April 9, 2019 which concern Plaintiffs alleged suicidal ideation. According to Plaintiff, "[i]t is hard to imagine how" Plaintiff's "second suicide attempt in one year presented no reasonable probability that the ALJ may have found his mental impairments severe." (R. Doc. 10 at 11). The Court, however, questions the validity of Plaintiff's alleged suicidal ideation given Plaintiff's statements while admitted at Desert Parkway—chiefly, his statement that he "didn't realize" the hospital "took death threats literally." (Tr. 11). Plaintiff also stated that "after going to three different hospital[s] for my knee, I told them that if they didn't find an orthopedic surgeon to drain it soon [,] I was going to hang myself. I was frustrated[.] I didn't mean it, but they took it seriously." (Tr. 31).

More importantly, while at Desert Parkway, Plaintiff submitted to a psychiatric evaluation and psychosocial assessment. (Tr.13-31). Dr. Campbell's observations following the assessment confirms the ALJ's decision. Dr. Campbell observed that Plaintiff's recent memory, remote memory, and abstractive reasoning was not impaired. (Tr. 15 and 22). Dr. Campbell further noted that Plaintiff's intelligence level was average; his judgment was fair; he had appropriate social skills; and Plaintiff denied suicidal ideation. (Tr. 15).

Plaintiff's medical records from Spring Valley dated April 7, 2019 to April 9, 2019 are similarly unconvincing. When Plaintiff arrived at Spring Valley he complained of dizziness and leg cramping. (Tr. 77) While there, he received a drug test and tested positive for methamphetamine and cannaboids. (Tr. 77). Plaintiff expressed that he was homeless and had been living on the streets. (Tr. 110). When he was cleared for discharge Plaintiff began to

express suicidal thoughts and was subsequently placed on a "L2K" hold. (Tr. 110). Considering Plaintiff's admittedly false exclamations of suicidal thoughts, the Court is uncertain about the validity of Plaintiff's "suicidal ideation." Accordingly, Plaintiff's characterization of his hospitalization for "suicide attempts" is not supported by the record and the Court does not find that there is a reasonable probability that it would change the outcome of the ALJ's decision.

Finally, to relate to the time before which benefits were denied, the medical evidence must pertain to visits that occurred on or before the date of the ALJ's May 15, 2019 decision. Here, two of the "new" records submitted to the Appeals Council concern medical visits that occurred after May 15, 2019: (1) Affective, Anxiety, Trauma and Stress-Related Disorders MMS completed by Dr. Darla Burnett, Ph.D. dated June 24, 2019; and (2) treatment notes from Plaintiff's visit with Dr. Burnett at NeuroMedical Center Clinic on June 21, 2019. Accordingly, these records are immaterial. Because none of the records submitted the Appeals Council are material, the Court finds that remand is unwarranted.

### D. The ALJ did not fail to include credible limitations in his RFC and appropriately applied the Medical-Vocational Guidelines

Plaintiff contends that the ALJ failed to include his mental limitations in his RFC determination. (R. Doc. 10 at 13). The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations. *Perez v. Barnhart,* 415 F.3d 457, 462 (5th Cir. 2005). In making a RFC determination, the ALJ must consider the combined effects of all medically determinable impairment, whether severe or not. 20 C.F.R. § 404.1545.

Here, after applying the "paragraph B" criteria, the ALJ found that "[b]ecause the claimant's medically determinable mental impairments caused no more than 'mild' limitation in any of the functional areas, they are [non-severe]." (Tr. 136). The ALJ went on to (accurately) explain:

> The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at step 2 and 3 of the sequential analysis process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the paragraph B mental functional analysis.

(Tr. 137). The ALJ then provided analysis of all of Plaintiff's functional limitations, including his non-severe mental limitations. The ALJ extensively analyzed Plaintiff's history of treatment for pain medication abuse, prior suicide attempt, and his mental health/behavioral health treatment. (Tr. 141-142). After considering the medical evidence concerning medically determinable impairments, including his mental limitations, the ALJ found that Plaintiff's impairments "could reasonably be expected to cause some of the alleged symptoms; however," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 142). This conclusion is supported by the record.

Plaintiff suggests that the ALJ's step two analysis, noting that Plaintiff has no more than mild limitations in the four functional areas, should necessarily result in certain mental limitations included in the RFC. This is incorrect. As noted above, the limitations in the paragraph B criteria are specifically not a residual functional capacity assessment. The Fifth Circuit "defines 'severe impairment' for purposes of step two in the negative: '[A]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' *Jeansonne v. Paul*, __ Fed. Appx. __, 2021 WL 1373965 (5th Cir. April 12, 2021) (citing *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). As detailed above, the evidence supports the ALJ's determination that the plaintiff's

18

mental limitations do not affect his ability to work. The Court confirms that the ALJ did not err in declining to include those same non-severe impairments in the RFC at step five. *Id.* at *4.

Plaintiff's final challenge is that the ALJ erred by applying the medical-vocational guidelines, commonly referred to as the "Grids", to direct a finding of non-disability. (R. Doc. 10 at 13-14). After formulating the RFC, the ALJ must determine whether the claimant has the RFC to perform past relevant work. *Carter v. Heckler,* 712 F.2d 137, 140 (5th Cir. 1983). If the claimant cannot return to his past work, the ALJ must determine the claimant's RFC to perform other kinds of work and whether jobs that he could perform exist in substantial numbers in the national economy. *Id.*

An RFC assessment invokes exertional and non-exertional factors. *Myers v. Apfel,* 238 F.3d 617, 620 (5th Cir .2001). Impairments can be either exertional or non-exertional. Exertional impairments are those that affect the claimant's ability to meet the strength demands of jobs. *Id.* A determination of exertional impairments involves an evaluation of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. *Id.* All other impairments are non-exertional. *Lewis v. Barnhart*, 460 F. Supp. 2d 771, 788 (S.D. Tex. 2006) (citing *Sykes v. Apfel,* 228 F.3d 259, 263 (3d Cir. 2000)).

The determination of a claimant's RFC is made either by application of the Grids or by taking expert vocational testimony. "In the absence of contrary evidence, the ALJ may properly rely on the testimony of a vocational expert in reaching a conclusion regarding a claimant's RFC to perform work available in the national economy." *Id.* Under certain circumstances, the ALJ may rely on the Grids without testimony from a vocational expert to assess whether a claimant is able to work or is disabled under the SSA. *Id.* (citing *Heckler v. Campbell,* 461 U.S. 458, 470 (1983)). Use of the Grids alone is only appropriate when (1) the claimant suffers only exertional impairments, or (2) the claimant's non-exertional impairments do not *significantly* affect the

claimant's RFC. *Id.* The Fifth Circuit has held that "the mere presence of a [non-exertional]

impairment does not preclude use of the Grid[s]. *Guillory v. Barnhart*, 129 F. App'x 873, 874

(5th Cir. 2005) (citing *Fraga v. Bowen,* 810 F.2d 1296, 1304 (5th Cir. 1987)). If the non-

exertional impairments (whether severe or not) do not *significantly* affect the claimant's RFC,

use of the Grids is appropriate. *Id.* (upholding the ALJ's application of the Grids even though the

claimant had a severe non-exertional limitation).

In this case, the ALJ found that Plaintiff's mental impairments of depression, anxiety, and

ADHD do not significantly compromise his ability to perform work. Particularly, the ALJ

concluded that Plaintiff's mental impairments "cause no more than *minimal* limitation[s] on"

Plaintiff's "ability to perform basic mental work activities." (Tr. 134). There is ample evidence

in the record to support this finding. First, Plaintiff's own testimony as well as medical evidence

show that Plaintiff's mental impairments are manageable and are improved with the use of

medication. (*See* Tr. 322 stating that Plaintiff "continues to take Klonopin which is helpful with

anxiety."). At the hearing before the ALJ, Plaintiff testified that medication helped his

depression. (Tr. 162). He further alluded that, although he preferred not take medication, it

helped with his anxiety and fear of being around people by stating:

> There's nothing else I can think of, besides just anxiety and, you know, being
> around people. That another thing, I don't want to have to take pills to get rid of
> my anxiety to go outside of the house, but that's why I'm trying to get on Prozac
> because it's not addicting like the Klonopin. (Tr. 164).

(Tr. 364). During a visit with Dr. Burnett, Plaintiff expressed that he had "no serious difficulties

with learning." (Tr. 364). At this same visit, Dr. Burnett performed a Montreal Cognitive

Assessment, during which she observed that Plaintiff "does not appear to ha e serious cognitive

deficits." (Tr. 364). Additionally, during a deposition on March 21, 2018, Plaintiff made clear

that he could maintain focus while using Adderall. (Tr. 931). Accordingly, because the ALJ

found that Plaintiff's non-exertional impairments would not significantly affect his ability to

perform work, the ALJ was entitled to rely on the Grids to determine if Plaintiff was disabled, and the ALJ was not required to obtain testimony of a vocational expert.

## V.    CONCLUSION

For the reasons given above, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on August 11, 2021.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**